8/24/21 v3 DL

# FORBEARANCE AGREEMENT

THIS FORBEARANCE AGREEMENT (this "Agreement") is entered into as of the 24th day of July, 2021 (the "Effective Date"), by and among SAFE HARVEST MEDICAL, LLC, a Wyoming limited liability company with offices located at 1201 S. 1st Street, McAllen, TX 78501 ("Merchant"), and MCGRAW CAPITAL PARTNERS, LLC ("Company"). Capitalized terms not otherwise defined herein shall have the meanings given to such terms in the Agreements (as defined below).

## RECITALS AND STIPULATIONS

A. Merchant and Company are parties to the following Agreements (each, an "Agreement"; collectively, and as amended, modified, supplemented, restated or replaced from time to time, the "Agreements"):

(i) MERCHANT INVOICE PURCHASE AGREEMENT, dated as of November 17, 2020 (the "November 2020 MIPA") between the Merchant and McGraw Capital Partners, LLC (the "Company"); and

(ii) MERCHANT INVOICE PURCHASE AGREEMENT, dated as of December 15, 2020 (the "December 2020 MIPA") between the Merchant and the Company; and

(iii) MERCHANT INVOICE PURCHASE AGREEMENT, dated as of January 26, 2021 (the "January 2021 MIPA") between the Merchant and the Company; and

(iv) MERCHANT INVOICE PURCHASE AGREEMENT, dated as of February 23, 2021 (the "February 2021 MIPA") between the Merchant and the Company; and

(v) MERCHANT INVOICE PURCHASE AGREEMENT, dated as of March 22, 2021 (the "March 23, 2021 MIPA") between the Merchant and the Company; and

(vi) MERCHANT INVOICE PURCHASE AGREEMENT, dated as of March 30, 2021 (the "March 30, 2021 MIPA"; together with the November 2020 MIPA, the December 2020 MIPA, the January 2021 MIPA, the February 2021 MIPA, and the March 23, 2021, the "MIPA Agreements"), between the Merchant and the Company; and

(vii) TRADE FINANCE AGREEMENT, dated as of May 5, 2021 (the "May 2021 TFA"), between the Merchant and the Company.

B. In connection with the Agreements, the Merchant executed that certain Promissory Note in favor of Company, dated as of May 5, 2021 (the "May 2021 TFA Note"; together with the Agreements, the Asset Transfer Agreement (as defined below), and any other documents, instruments and agreements delivered in connection with the Agreements, the "Transaction Documents");

**EXHIBIT G**

8/24/21 v3 DL

C. Merchant is in default of its payment obligations and other obligations under the Transaction Documents by failing to timely pay to the Company the Aggregate Amount Owed (as defined below).

D. Merchant is in receipt of the Company's Notice of Default, dated July 28, 2021 (the "Default Notice"), pursuant to which the Company provided Merchant with due, proper and lawful notice of its defaults under the Transaction Documents, and demanded that Merchant immediately take all necessary action to transfer full custody, control and possession to the Company of all personal protective equipment and other goods owned by Merchant (collectively, "Inventory"), which Inventory is currently under the possession and control of Merchant.

E. Merchant has requested that Company forbear from exercising any of its rights and remedies under the Transaction Documents and applicable law in respect of certain Events of Default under the Transaction Documents, and Company has agreed to so forbear upon the terms and subject to the conditions set forth in this Agreement;

F. Merchant and Company acknowledge and agree that this Agreement has been negotiated in good faith.

**NOW, THEREFORE,** in consideration of the recitals and stipulations set forth above and the mutual promises and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Merchant and Company hereby agree as follows:

## AGREEMENT

1. **General Acknowledgment.** Merchant acknowledges and agrees to the following:

    (a) Merchant hereby acknowledges the accuracy of the representations set forth in the Recitals and Stipulations of this Agreement;

    (b) Neither this Agreement nor any other agreement entered in connection herewith or pursuant to the terms hereof shall be deemed or construed to be a compromise, satisfaction, reinstatement, accord and satisfaction, novation or release of any of the Transaction Documents, or any rights or obligations thereunder, or a waiver by Company of any of its rights under the Transaction Documents or at law or in equity;

    (c) Neither this Agreement nor any other agreement executed in connection herewith pursuant to the terms hereof, nor any actions taken pursuant to this Agreement or such other agreement shall be deemed to cure any Event of Default which may exist under the Transaction Documents, or to be a waiver by Company of any Event of Default under the Transaction Documents, or of any rights or remedies in connection therewith or with respect hereto, evidencing the parties' intention that Merchant's obligations under the Transaction Documents shall remain in full force and effect;

    (d) All liens, security interests, rights and remedies granted to Company for its benefit under the Transaction Documents are hereby renewed, confirmed and continued; and

8/24/21 v3 DL

(e) Merchant reaffirms the validity, binding effect and enforceability of each of the Transaction Documents, as modified by provisions of this Agreement, and acknowledge that Merchant is liable to Company for the full amount of all funds provided by the Company (including, without limitation, under the MIPA Agreements), and the fees incurred by Merchant in connection therewith, in each case as evidenced by the Transaction Documents (as modified hereby), without offset, deduction, claim, counterclaim, defense or recoupment of any kind.

**2. Confirmation of Events of Default.** Merchant confirms and acknowledges that as of the date hereof, (i) it is indebted and obligated to Company under the Transaction Documents for the amounts set forth below (the "Aggregate Amount Owed"), (ii) it has failed to timely pay the Aggregate Amount Owed, and (iii) it is therefore in default of each of the Agreements in the following dollar amounts:

| Deal | Deal Total Owed | Grand Total Owed |
|---|---|---|
| 1 | $ 536,177.61 | $ 536,177.61 |
| 2 | $ 1,244,871.00 | $ 1,781,048.61 |
| 3 | $ 2,864,681.71 | $ 4,645,730.32 |
| 4 | $ 2,864,685.71 | $ 7,510,416.03 |
| 5 | $ 197,242.77 | $ 7,707,658.80 |
| 6 | $ 802,230.00 | $ 8,509,888.80 |

**3. Consent; Forbearance; Conditional Partial Forgiveness of Aggregate Amount Owed.**

(a) Subject to the terms of Section 4 hereof, and Merchant's satisfaction of all of Merchant's obligations under the Transaction Documents, Company hereby *conditionally and temporarily* waives any now *existing* default or Event of Default under the Transaction Documents (such *existing* waived defaults being "the Events of Default").

(b) Subject to the terms of Section 4 hereof, Company will forbear from taking action with respect to the Events of Default, other than the occurrence of any Forbearance Default (as defined in Section 7) (such period, the "Forbearance Period"), provided that the Merchant complies with all terms and conditions contained in this Agreement. Company's obligation to so forbear will commence on the Effective Date and will terminate on the earlier of October 31, 2021 (the "Forbearance Termination Date"), or the date of occurrence of any Forbearance Default (such period of forbearance being the "Forbearance Period"). Such forbearance is without waiver of any term, covenant, or condition to be performed or satisfied by Merchant pursuant to the Transaction Documents.

(c) As a good faith accommodation to Merchant, and *provided that Merchant does not default under this Agreement or any of the other Transaction Documents, or contest the validity and enforceability hereof or thereof*, the Company hereby agrees, in its sole and absolute

8/24/21 v3 DL

discretion, to accept lesser payment in full satisfaction of the Aggregate Amount Owed, as follows (the "Conditional Amount Owed"):

|   | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
|   | Deal |   | Principle | Return | P+0.3 |   | Totals |
| 1 |   |   |   |   |   |   |   |
| 2 |   |   |   |   |   |   |   |
| 3 | 1 | Nov-20 | $ 255,080.00 | 0.3 | $ 76,524.00 |   |   |
| 4 |   |   |   |   | $ 331,604.00 |   | $ 331,604.00 |
| 5 |   |   |   |   |   |   |   |
| 6 | 2 | Jan-21 | $ 1,244,870.00 | 0.3 | $ 373,461.00 |   |   |
| 7 |   |   |   |   | $ 1,618,331.00 |   | $ 1,618,331.00 |
| 8 |   |   |   |   |   |   |   |
| 9 | 3 | Feb-21 | $ 2,245,870.00 | 0.3 | $ 673,761.00 |   |   |
| 10 |   |   |   |   | $ 2,919,631.00 |   | $ 2,919,631.00 |
| 11 |   |   |   |   |   |   |   |
| 12 | 4 | 22-Mar | $ 750,000.00 | 0.3 | $ 225,000.00 |   |   |
| 13 |   |   |   |   | $ 975,000.00 |   | $ 975,000.00 |
| 14 |   |   |   |   |   |   |   |
| 15 | 5 | 30-Mar | $ 150,000.00 | 0.3 | $ 45,000.00 |   |   |
| 16 |   |   |   |   | $ 195,000.00 |   | $ 195,000.00 |
| 17 |   |   |   |   |   |   |   |
| 18 |   | McGraw | $ 4,645,820.00 |   |   |   | $ 6,039,566.00 |
| 19 |   |   |   |   |   |   |   |
| 20 | 6 | Skystone | $ 715,000.00 | 0.025 | $ 17,875.00 |   |   |
| 21 |   |   |   | 10% | $ 71,500.00 |   |   |
| 22 |   |   |   |   | $ 715,000.00 |   |   |
| 23 |   |   |   |   | $ 804,375.00 |   | $ 804,375.00 |
| 24 |   |   |   |   |   |   |   |
| 25 |   | Funded: | $ 5,360,820.00 |   |   | SUM: | $ 6,843,941.00 |

(d)     As a further good faith accommodation to Merchant, the Company may, in its sole and absolute discretion, *temporarily and conditionally* permit Merchant to retain up to twenty (20%) of the net profits received from the sale of the Inventory on the terms and conditions set forth herein, so as to enable Merchant to continue operating.

(e)     Notwithstanding the foregoing, or anything to the contrary herein, in the other Transaction Documents or elsewhere, Merchant shall immediately be liable for the full Aggregate Amount Owed, and shall be required to remit 100% of the proceeds from the sale of Inventory to the Company, in the event that Merchant at any time defaults under this Agreement or under any of the other Transaction Documents, or contests the validity and enforceability hereof or thereof. The foregoing is in addition to all other rights and remedies available to the Company hereunder, under the other Transaction Documents, under law and in equity, including the rights and remedies available under the Uniform Commercial Code of the State of New York.

8/24/21 v3 DL

**4. Conditions to the Company's Forbearance.** Company's willingness to forbear as provided in this Agreement, and its willingness to accept the Conditional Amount Owed in lieu of the Aggregate Amount Owed, is conditioned on the following:

   a. The due and proper execution and delivery of this Agreement by the Merchant;

   b. Merchant immediately taking all necessary action to transfer full custody, control and possession to the Company of all Inventory, all such action to be satisfactory to the Company in its sole and absolute discretion, including, without limitation, by Merchant duly executing and delivering, and performing under, that certain Asset Purchase Agreement with the Company, dated concurrently herewith, pursuant to which Merchant shall assign all Inventory and proceeds to the Company (the "Asset Purchase Agreement");

   c. Merchant satisfying all of its obligations under the Transaction Documents and hereunder on or before the Forbearance Termination Date, including, without limitation, the payment in full of the Aggregate Amount Owed pursuant to the Transaction Documents (subject to Section 3(c)); and

   d. Merchant refraining from doing anything that would constitute (i) a breach of this Agreement or the documents and instruments executed in connection with this Agreement; or (ii) a further breach of the Transaction Documents.

   e. In addition to Merchant performing in accordance with the terms and provisions of this Agreement and the documents and instruments executed in connection with this Agreement, Merchant shall continue to perform in accordance with the terms, covenants, and conditions of the Transaction Documents. Merchant acknowledges and agrees that this Agreement is not intended to set forth all the outstanding terms, covenants, and agreements between and among the parties, such that the absence of an express provision herein is not to be construed as an intention of the Company not to enforce such provision in any of the Transaction Documents. Merchant agrees that the terms and conditions of this Agreement and the documents and instruments executed in connection with this Agreement shall be in addition to those contained in the Transaction Documents.

**5. Covenants.** Merchant will, without limitation, do the following:

   (a)   Comply with all requirements of all the Transaction Documents to the extent not inconsistent with this Agreement.

   (b)   Not enter into any agreements with any of their other creditors that might impair Merchant's ability to perform under this Agreement.

   (c)   Ensure that the Company is fully informed at all times of all matters relating to the operation of Merchant's businesses, including any planned changes in key personnel or material changes in the manner of operating such businesses.

**6. Representations and Warranties.** To induce Company to enter into this Agreement, Merchant represents and warrants to Company as follows:

5

8/24/21 v3 DL

(a) <u>Organization</u>. Merchant is a corporation duly organized, validly existing, and in good standing under the laws of the Wyoming.

(b) <u>Authority</u>. Merchant has full company power and authority to execute, deliver, and perform this Agreement and has taken all company action required by law and its articles of incorporation to authorize the execution and delivery of this Agreement. This Agreement is a valid and binding agreement of Merchant enforceable against Merchant in accordance with its terms.

(c) <u>Consent and Approvals</u>. No consent or approval of any party is required in connection with the execution and delivery of this Agreement by Merchant, and the execution and delivery of this Agreement does not (i) contravene or result in a breach or default under the articles of incorporation, articles of organization, bylaws, operating agreement or any other governing document, agreement or instrument to which Merchant is a party or by which any of their respective properties are bound, or (ii) violate any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award applicable to Merchant.

(d) All representations and warranties contained in this Agreement, including but not limited to the recitals herein, and in any and all of the other Transaction Documents, are true and correct as of the date of this Agreement, and all such representations and warranties shall survive the execution of this Agreement. The Transaction Documents represent unconditional, absolute, valid, and enforceable obligations against Merchant. To the best of its knowledge, Merchant has no claims or defenses against Company or any other person or entity which would or might affect (i) the enforceability of any provisions of any Transaction Documents or (ii) the collectability of sums advanced by Company in connection with Merchant's obligations under the Transaction Documents. Merchant understands and acknowledges that Company is entering into this Agreement in reliance upon, and in partial consideration for, this acknowledgment and representation, and agrees that such reliance is reasonable and appropriate.

(e) <u>Cooperation of Merchant</u>. Merchant shall take any and all actions of any kind or nature whatsoever, either directly or indirectly, that are necessary to prevent Company from suffering a loss with respect to the Transaction Documents, or any rights or remedies of Company with respect to the Transaction Documents or this Agreement in the event of Merchant's default under this Agreement, including, without limitation, by promptly providing all information, documentation, consents and authorizations necessary in order to provide Company with full possession and control of the Inventory.

(f) <u>Due Authorization</u>. Each person executing this Agreement and the documents and instruments executed in connection with this Agreement in a representative capacity on behalf of Merchant has been duly authorized to execute this Agreement and said documents and instruments by all appropriate action and is empowered to do so.

(g) Merchant has received, or has had the opportunity to receive, independent legal advice from attorneys of its choice with respect to the advisability of executing this Agreement and the documents and instruments executed in connection herewith, and prior to the

8/24/21 v3 DL

    execution of this Agreement and documents and instruments executed in connection herewith, Merchant's counsel reviewed this Agreement and discussed this Agreement with Merchant.

(h) The representation, warranties, and agreements set forth herein shall be cumulative and in addition to all other representations, warranties, and agreements which Merchant give or caused to be given to the Company, whether heretofore, now, or hereafter.

**7. Default.** A Forbearance Default ("Forbearance Default") shall exist under this Agreement if any one or more of the following events shall have occurred, and which remain uncured past any applicable cure period, and the Company, at its option in its sole discretion, may make all obligations of Merchant immediately due and payable, and may immediately terminate the Forbearance Period, all without demand, presentment, or notice, all of which requirements, if any, Merchant hereby waives:

(a) Any breach or default in performance by Merchant, of any of the agreements, payments, terms, conditions, covenants, warranties, or representations set forth in this Agreement, or any of the other Transaction Documents, including, without limitation, Merchant's failure to timely provide the Company with full possession and control of the Inventory (including pursuant to the Asset Transfer Agreement);

(b) Any representation or warranty of Merchant herein or in the Transaction Documents shall be false, misleading, or incorrect in any material respect;

(c) There is any substantial impairment of the prospect of Merchant's satisfaction of its obligations to the Company or substantial impairment of the value of the Inventory, or any substantial impairment of the priority of the Company's security interest in or lien against the Merchant's assets;

(d) The filing of any lawsuit or other legal action by or against Merchant challenging (i) the existence or priority of the Company's security interests; or (ii) the enforceability or validity of this Agreement, the documents or instruments executed in connection with this Agreement, or the Transaction Documents;

(e) Merchant is enjoined, restrained, or in any way prevented by court order from continuing to conduct any material part of its business affairs;

(f) Merchant (i) shall fail to pay its debts as such debts become due (except as permitted under this Agreement), (ii) shall make an assignment for the benefit of its creditors, (iii) shall admit in writing its inability to pay debts as they become, (iv) shall file a petition under any chapter of the Bankruptcy Code or any similar law, state or federal, now or hereafter existing, (v) shall become "insolvent" as that term is generally defined under the Bankruptcy Code, (vi) shall have any involuntary bankruptcy case commenced against it, whether or not an order for relief is entered, or (vii) shall have a custodian, trustee, or receiver appointed for, or have any court take jurisdiction of, its property, or any portion thereof, in any voluntary or involuntary proceeding, including those for the purpose of reorganization, arrangement, dissolution, or liquidation; or

7

8/24/21 v3 DL

**8. Remedies in Event of Default.** Immediately upon the occurrence of an Forbearance Default which remains uncured past any applicable cure period, and notwithstanding anything to the contrary set forth herein, Company shall have the rights and remedies set forth in the Transaction Documents, under law and in equity, including all rights and remedies under the Uniform Commercial Code of the State of New York.

**9. Incorporation of Other Documents.** The Transaction Documents and all other agreements, documents and writings between or among Merchant and Company are expressly reaffirmed and incorporated herein by this reference, and shall remain in full force and effect and continue to govern and control the relationship between the parties hereto except to the extent they are inconsistent with, amended or superseded by this Agreement. To the extent of any inconsistency, amendment or superseding provision, this Agreement shall govern and control.

**10. Notice.** All notices or demands hereunder to parties hereto shall be sufficient if made in writing and sent and confirmed by facsimile addressed to the parties respectively as follows:

**11. Amendments.** This Agreement may not be amended or modified except in a writing signed by Company and Merchant.

**12. Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of Merchant and Company and their respective successors, heirs (where appropriate) and assigns. Company does not undertake to give or to do or refrain from doing anything directly to or for the benefit of any person other than Merchant and, with respect to Merchant, other than as described herein. Although third parties may incidentally benefit from this Agreement, there are no intended beneficiaries other than Merchant and Company.

**13. No Waiver; Modifications.** No delay or failure of Company to exercise any right, power or privilege hereunder shall affect such right, power or privilege, nor shall any single or partial exercise thereof preclude any further exercise thereof, nor the exercise of any other right, power or privilege. The rights of Company hereunder are cumulative and are not exclusive of any rights or remedies which Company would otherwise have accept as modified herein. No amendment, modification, supplement, termination, consent or waiver of or to any provision of this Agreement or the Transaction Documents, nor any consent to any departure therefrom, shall in any event be effective unless the same shall be in writing and signed by or on behalf of Company.

**14. Waivers Voluntary.** The releases and waivers contained in this Agreement are freely, knowingly and voluntarily given by each party, without any duress or coercion, after each party has had opportunity to consult with its counsel and has carefully and completely read all of the terms and provisions of this Agreement.

**15. Governing Law and Venue; WAIVER OF JURY TRIAL.** This Agreement is made in the State of New York, and the validity of this Agreement, any documents incorporated herein or executed in connection herewith, and (notwithstanding anything to the contrary therein) the Transaction Documents, and the construction, interpretation, and enforcement thereof, and the rights of the parties thereto shall be determined under, governed by and construed in accordance

8

8/24/21 v3 DL

with the internal laws of the State of New York, without regard to principles of conflicts of law, and to the federal laws of the United States, as applicable. In any action or suit to enforce any right or remedy under this Agreement or to interpret any provision of this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees, costs, and other expenses. Each of Merchant and the Company hereby irrevocably and unconditionally (i) consents to submit to the jurisdiction of the courts of the State of New York and of the United States of America located in the State of New York for any action, suit, or proceeding arising out of or relating to this Agreement and the transactions contemplated hereby, (ii) waives any objection to the courts of the State of New York or the United States of America located in the State of New York as the appropriate venue for any such action, suit, or proceeding, and (iii) agrees not to plead or claim that such courts would constitute an inconvenient forum for any such action, suit, or proceeding.

**JURY TRIAL WAIVER. THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THIS AGREEMENT, OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY, VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH ITS ATTORNEYS.**

**16. Execution in Counterparts; Electronic Execution.** This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which counterparts, when so executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same agreement. This Agreement shall become effective upon the execution of a counterpart hereof by each of the parties hereto. A telecopy or email of the signature of any party on any counterpart shall be effective as the signature of the party executing such counterpart for purposes of effectiveness of this Agreement. The words "execution," "signed," "signature," and words of like import in this Agreement shall be deemed to include electronic signatures or the keeping of records in electronic form, each of which shall be of the same legal effect, validity or enforceability as a manually executed signature or the use of a paper-based recordkeeping system, as the case may be, to the extent and as provided for in any applicable law, including the Federal Electronic Signatures in Global and National Commerce Act, the New York Electronic Signatures and Records Act, or any other similar state laws based on the Uniform Electronic Transactions Act.

**17. Entire Agreement.** This Agreement, and any agreements, documents and instruments executed and delivered pursuant hereto or in connection herewith, or incorporated herein by reference, contains the entire agreement of the parties hereto and no party shall be bound by anything not expressed in writing.

**18. Severability.** If any part, term or provision of this Agreement is held by a court of competent jurisdiction to be illegal, unenforceable or in conflict with any law of the State of New York,

8/24/21 v3 DL

federal law or any other applicable law, the validity and enforceability of the remaining portions or provisions of this Agreement shall not be affected thereby.

**19. Further Assurances.** Merchant agrees to execute such other and further documents and instruments as Company may request to implement the provisions of this Agreement and to perfect and protect the liens and security interests created by the Transaction Documents.

**20. Indemnification.** Merchant hereby indemnifies and saves the Company and its officers, managers, employees, agents, designees, attorneys, and accountants (collectively, "Representatives") harmless from and against any and all losses, liabilities, claims, damages, costs and expenses (including reasonable attorneys' fees) to which any of them may become subject which arise from or relate to this Agreement, or any of the other Transaction Documents, or any action or alleged action or effort taken or alleged to have been taken by Merchant in connection with any action or forbearance in action contemplated hereunder (collectively, the "Claims"). The Company shall have the sole and complete control of the defense of any such Claims. The Company is hereby authorized to settle or otherwise compromise any such Claims as the Company in good faith determines shall be in its best interests. The obligations of Merchant under this Section 20 shall survive the repayment of the Aggregate Amount Owed (subject to Section 3(c)), and the performance of its Obligations under the Agreements and the other Transaction Documents.

**21. Integration.** This Agreement, the Transaction Documents and the Default Notice (collectively, the "Integration Documents"), are intended by the parties as the final expression of their agreement and therefore incorporate all negotiations of the parties hereto and are the entire agreement of the parties hereto. Merchant acknowledges that it is relying on no written or oral agreement, representation, warranty, or understanding of any kind made by Company or any employee or agent of Company except for the agreements by Company set forth herein or in any Integration Documents. Except as expressly set forth in this Agreement, the Integration Documents remain unchanged and in full force and effect.

**22. Headings.** This Agreement shall be construed without regard to any presumption or rule requiring that it be construed against the party causing this Agreement or any part hereof to be drafted. The headings used in this Agreement are for convenience only and shall be disregarded in interpreting the substantive provisions of this Agreement.

**23. Expenses and Fees.** Merchant shall pay and reimburse the Company for all actual fees, costs, and expenses, including all actual attorneys' fees and costs, fees and costs expended or incurred by the Company in connection with (i) the negotiation, preparation, amendment, interpretation, implementation, and enforcement of this Agreement, or any instrument or agreement executed in connection herewith, including the preparation and negotiation of this Agreement, during any workout or attempted workout, or in connection with the rendering of legal advice as to the Company's rights, remedies, and obligations under the Transaction Documents; (ii) collecting any sum which becomes due the Company under the Transaction Documents; (iii) any proceeding for declaratory relief, any counterclaim to any proceeding, or any appeal; or (iv) the protection,

8/24/21 v3 DL

preservation, or enforcement of any rights of the Company or any security pledged to the Company.

24. **No Admission of Liability; No Prejudice**. Nothing contained herein shall be construed as an admission by the Company of any liability of any kind, all such liability being expressly denied, nor shall this Agreement prejudice any of the Company's rights under the Transaction Documents, all of which are hereby expressly reserved.

25. **Inconsistency**. In the event of any inconsistency between the terms of this Agreement and any billings, statements, or the like from the Company to Merchant in connection with the Transaction Documents, the terms of this Agreement shall prevail over the terms of any other such billings, statements, or the like.

26. **No Presumption Against Draftsman**. Each of the undersigned parties hereby acknowledges the undersigned parties fully negotiated the terms of this Agreement, that each such party had an equal opportunity to influence the drafting of the language contained in this Agreement and that there shall be no presumption against any such party on the ground that such party was responsible for preparing this Agreement or any part hereof.

*{Signature page follows}*

8/24/21 v3 DL

IN WITNESS WHEREOF, Merchant and Company, by their duly authorized representatives, have caused this Forbearance Agreement to be executed in the manner and form sufficient to bind them as of the date first above written.

MCGRAW CAPITAL PARTNERS, LLC

By: _____
Name: John Kozey
Title: COO

SAFE HARVEST MEDICAL, LLC

By: _____
Name: Garrett E. Mann
Title: President