# Asset Transfer Agreement

Date: August____, 2021

## Parties

1. Safe Harvest Medical, LLC

2. McGraw Capital Partners, LLC

## Representations, Warranties and Covenants

McGraw Capital Partners, LLC ("McGraw"), a Delaware Limited Liability Company, is in the business of providing funding to businesses by purchasing their Account Receivables. Safe Harvest Medical, LLC ("SHM"), a Wyoming Limited Liability Company, is in the business of brokering deals involving personal protective equipment and supplies. McGraw and SHM have regularly conducted business with one another in the past, and McGraw is a secured creditor of SHM.

As of today, August ____, 2021, SHM and McGraw are parties to numerous Merchant Invoice Purchase Agreements, Trade Finance Agreement(s), Promissory Note(s) and/or other agreements and instruments (collectively, the "McGraw Agreements") with respect to secured financing previously provided by McGraw to SHM. SHM hereby acknowledges and agrees that it is in material default (the "Events of Default") of its obligations under the McGraw Agreements (the "Obligations"). SHM and McGraw wish to mitigate McGraw's damages against SHM as a result of SHM's breach of the McGraw Agreements, such damages to include, without limitation, all costs and expenses (including reasonable attorneys' fees) incurred by McGraw as a result of, or arising out of or in connection with, (i) any and all claims relating to any of McGraw's acts of commission or omission directly or indirectly taken in connection with this Asset Transfer Agreement (together with all amendments, schedules and exhibits hereto, the "Agreement") and/or the Transferred Assets, or (ii) enforcing or defending McGraw's claims against SHM and/or the Transferred Assets.

Concurrently herewith, each of SHM and McGraw are entering into that certain Forbearance Agreement, pursuant to which McGraw shall conditionally and temporarily waive any now existing Events of Default under the McGraw Agreements strictly on the terms and conditions set forth therein (together with all amendments, schedules and exhibits thereto, the "Forbearance Agreement"). SHM's execution and delivery of this Agreement, and its assignment of the Transferred Assets (as defined below) hereunder, are strict conditions precedent of McGraw's agreement to temporarily forbear under the Forbearance Agreement.

All of the terms, conditions and other provisions of the Forbearance Agreement are hereby expressly reaffirmed and incorporated herein by this reference and made a part hereof. This Agreement shall constitute a part of the Forbearance Agreement as if it were an original part

8/25/21 v5 DL

**EXHIBIT H**

thereof, and all provisions of the Forbearance Agreement are deemed to apply to this Agreement, as applicable. In the event of any conflict or inconsistency between the terms and conditions of this Agreement and the Forbearance Agreement, the Forbearance Agreement shall govern and control.

Pursuant to the Forbearance Agreement, SHM hereby irrevocably assigns, transfers and conveys to McGraw, without recourse, all of SHM's Accounts Receivable (as defined immediately below) and other rights and interests which SHM receives or becomes entitled to receive in connection with the sale of personal protective equipment and other goods (collectively, "Inventory") and/or the provision of services, including, without limitation (i) all of SHM's present and future Accounts Receivable, (ii) upon McGraw's election all of SHM's right, title and interest in and to the Inventory represented by the Accounts Receivable, including goods that may be returned by SHM's customers, (iii) all of its rights against third parties with respect to the Accounts Receivable, and (iv) the assets identified in Schedule A (collectively, the "Transferred Assets"). All of the Transferred Assets shall be free and clear of all encumbrances of any kind, except for McGraw's lien(s).

"Accounts Receivable" means "accounts" (as that term is defined in the Uniform Commercial Code in effect from time to time in the State of New York ("UCC")), contract rights, documents, notes, drafts, and other obligations owed to or owned by Company arising from the sale of goods or the rendering of services by Company in connection with the Accounts Receivable, all general intangibles, rights, warranties, indemnities, insurance benefits, tax refunds and all other rights relating to these obligations, all proceeds and products of these obligations, all proceeds of proceeds, all guaranties for these obligations, and, upon McGraw's election, all Inventory represented by these obligations.

McGraw agrees (A) to apply (i) the net cash proceeds actually received by McGraw from the Transferred Assets (such proceeds, collectively, the "Payments"), towards the amounts due and payable by SHM to McGraw under the McGraw Agreements, and (B) to temporarily forbear from enforcing its rights and remedies in connection with the Events of Default. McGraw may apply all Payments received to SHM's Obligations, or portion thereof, in any manner and in any order as McGraw may determine in its sole discretion, notwithstanding contrary instructions from SHM.

SHM represents and warrants that there are no liens on the Transferred Assets, other than McGraw's lien(s), which would prevent, delay or otherwise impair the full, free and clear transfer of title to the Transferred Assets by SHM to McGraw. SHM shall cooperate with McGraw in good faith, including by assisting McGraw in taking possession and/or control of the Transferred Assets, and selling the Transferred Assets.

This Agreement shall be governed by and construed in accordance with the laws of the state of New York and applicable federal law, as more fully set forth in the Forbearance Agreement, and in accordance with the provisions regarding venue and jury trial waiver set forth therein.

8/25/21 v5 DL

This Agreement, the Forbearance Agreement and the McGraw Agreements set forth the entire agreement and understanding of the parties with respect to the subject matter hereof and thereof, and may not be amended or modified except in a writing subscribed to by McGraw and SHM. Nothing in this Agreement constitutes a waiver of any rights and remedies McGraw has against SHM in connection with the McGraw Agreements, as is more fully set forth in the Forbearance Agreement.

*{Remainder of page intentionally blank; signature page follows}*

8/25/21 v5 DL

This Agreement may be executed in one or more physical counterparts, including by signature pages delivered in electronic .pdf or facsimile format, each of which shall be deemed an original for all purposes, but all of which together shall constitute one and the same instrument.

This Agreement is made and entered into effective as of August __, 2021.

SAFE HARVEST MEDICAL, LLC


By: _Garrett E. Mann_____
    Garrett Mann, Manager


MCGRAW CAPITAL PARTNERS, LLC


By:_____
  John Kozey, Authorized Representative

8/25/21 v5 DL

**Schedule A
To
Asset Transfer Agreement
(Transferred Assets)**

| Description | Quantity | Approximate Value |
|---|---|---|
| Nitrile Gloves | 288,740 boxes @ $6.00 each | $1.73244M |
| Anticipated Refund from Rapid Medical Supplies /Ira Glassner | 7,260 boxes @ $9.00 each | $65,340.00 / $20,000.00 |
| | | |

8/25/21 v5 DL

8/25/21 v5 DL